IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRESTON HARRIS, #288-008, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-18-668 |
| ANNE MADDOX, | * | |
| Defendant. | * | |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Anne Maddox's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6. (D.Md. 2018). For the reasons outlined below, the Court will grant Maddox's Motion.

### I. BACKGROUND[1]

Harris is a Division of Corrections (the "DOC") inmate presently housed at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1, ECF No. 1).[2] On March 14, 2015 at approximately 9:47 a.m., Harris and other inmates were in the dining room when an inmate repeatedly struck another inmate in the back of

---

[1] Unless otherwise noted, the facts outlined here are set forth in Plaintiff Treston Harris's Complaint (ECF No. 1). To the extent the Court discusses facts that Harris does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Harris. The Court will address additional facts when discussing applicable law.

[2] Citations to the Complaint and its Exhibits refer to the pagination the Court's Case Management and Electronic Court Files ("CM/ECF") system assigned.

the head with a sock containing an A/C adaptor, and then a second inmate joined in the assault. (Harris Aff. ¶¶ 2–3, ECF No. 23-3; Def.'s Mot. Dismiss Mot. Summ. J. ["Def.'s Mot."] Ex. 1 at 4, ECF No. 21-2).[3] A corrections officer ordered the inmates to stop fighting. (Def.'s Mot. Ex. 1 at 4). When the inmates did not comply, the corrections officer deployed pepper spray in the area. (Id.).

After the inmates involved in the incident were removed from the dining room, Officer Christopher McKenzie ("Officer McKenzie") found Harris sitting on the A/C adaptor, "attempting to conceal it from staff." (Id.). Officer McKenzie confiscated the weapon and secured it inside the NBCI Evidence Room.[4] (Id.). According to Officer McKenzie, Harris was handcuffed and escorted to Housing Unit #1, where he was and placed on administrative segregation pending adjustment. (Id. at 6).

That same day, Officer McKenzie's supervisor, Ernest Dolly, charged Harris with three rule violations: (1) the possession, use, or manufacture of a weapon; (2) interfering with or resisting the performance of staff duties to include a search of a person, item, area or location; and (3) possessing or passing contraband. (Id.). Harris was given notice of an inmate disciplinary hearing (the "Notice") along with the rule violation report (the "Rule Violation Report"). (Id. at 7). The Notice stated, in relevant part, that Harris "may be permitted to call a witness" at the hearing if he "list[s] the individual by name below." (Id.).

---

[3] Citations to Exhibit 1 to Maddox's Motion refer to the pagination the Court's CM/ECF system assigned

[4] Harris disputes that Officer McKenzie confiscated the A/C adaptor from him. (Harris Aff. ¶¶ 4–7, ECF No. 1-7). This dispute is not material to the claims Harris brings against Maddox.

The Notice cautioned Harris that "failure to list a witness by name below at the time of the service of this notice shall be deemed at your hearing a waiver by you of the witness." (Id.). Harris did not list the names of any witnesses he intended to call, nor did he sign the Notice. (Id. at 7–9). He asserts that he "was not allowed to sign the Notice of Inmate Rule Violation Form."[5] (Pl.'s Opp'n at 1, ECF No. 23).

On March 31, 2015, Harris attended his formal disciplinary hearing, at which Maddox served as the hearing officer. (Compl. at 3, 6). Harris moved for Maddox to review camera footage of the incident, which she granted. (Def.'s Mot. Ex. 1 at 10). Harris also testified that he had complied with the corrections officer's order to get down on the floor during the incident and that "unfortunately, after all was said and done the weapon was in [his] area." (Id. at 11). According to Harris, contrary to Officer McKenzie's report, the officers patted him down and allowed him to return to his housing unit before moving him to administrative segregation thirty minutes later. (Id.). Harris also asserted that the officers never confiscated a weapon from him. (Id.). Harris asked to call Sgt. Forney as a witness, but Maddox denied his request he did not list any witness on the Notice at the time of service. (Compl. at 6; Def.'s Mot. Ex. 1 at 10; see also id. at 7).

Maddox found Harris guilty of all three rule violations. (Def.'s Mot. Ex. 1 at 12–13). She imposed sanctions of 110 days in disciplinary segregation, revocation of 110 good conduct credits, and suspension of his visitation privileges for six months. (Id.). Maddox provided the following written explanation for her decision:

---

[5] It is unclear whether Harris is referring to the Notice or the Rule Violation Report. The Court assumes Harris is referring to the Notice.

3

> Treston Harris stated that the officer did not confiscate anything from him nor was he locked up in the dining hall, but the officers came to the cell later and locked him up. The video does show that Officer McKenzie left the dining hall without Harris, but the Serious Incident Report indicated that Officer McKenzie took the pieces of the weapon to Operations for placement in the Contraband box, and not that he escorted Harris to segregation unit. It is unlikely that the officer would carry the weapon to the segregation unit, thus it makes sense that Harris was taken by someone else. Hearing Officer finds that Harris did pick up the pieces of the object that was used to assault another inmate and did possess the remains of the weapon.

(Id. at 12).

Harris appealed Maddox's decision and sanctions to Frank Bishop, Warden of NBCI ("Warden Bishop"), arguing that Maddox refused to call Sgt. Forney as a witness and that her decision was unsupported by any evidence. (Compl. Ex. A at 1, ECF No. 1-1). On April 22, 2015, Warden Bishop affirmed Maddox's guilty findings but reduced Harris's segregation period from 110 to ninety days and reduced his good conduct credit revocation from 110 to thirty credits. (Compl. Exs. B–C, ECF Nos. 1-2, 1-3). Warden Bishop imposed a forty-five-day cell restriction. (Id.). On May 21, 2015, Harris appealed to the Inmate Grievance Office ("IGO"), arguing that Maddox violated his procedural due process rights. (Compl. Ex. D at 1–2, ECF No. 1-4). The IGO scheduled a hearing on Harris's appeal for August 5, 2015. (Compl. Ex. E, ECF No. 1-5).

On August 4, 2015, a day before the scheduled hearing was to take place, Patricia Goins-Johnson, the Department of Public Safety and Correctional Services'("DPSCS") Executive Director of Field Services, sent a memorandum to Warden Bishop reversing Harris's convictions and vacating the sanctions imposed, including the forty-five-day cell

restriction. (Compl. Ex. I, ECF No. 1-9). Goins-Johnson indicated that the video of the incident did not show Officer McKenzie confronting Harris or recovering a weapon. (Id.). She acknowledged that Harris returned to his cell and that Maddox did not "sufficiently resolve" the discrepancies between Officer McKenzie's report and what was depicted on the video. (Id.).

During the IGO hearing the following day, counsel for the DOC moved to dismiss Harris's grievance as moot based on Goins-Johnson's decision. (Compl. Ex. J at 7–10, ECF No. 1-10). The Administrative Law Judge ("ALJ") granted that motion. (Id. at 10; Compl. Ex. K at 6, ECF No. 1-11). Thereafter, Harris appealed the ALJ's decision to the Circuit Court for Allegany County, Maryland, (Compl. Ex. M at 1–3, ECF No. 1-13), which affirmed the ALJ's dismissal of Harris's grievance, (Compl. Ex. V, ECF No. 1-22).

On March 6, 2018, Harris sued Maddox under 42 U.S.C. § 1983 (2018), alleging that she wrongfully convicted him of false charges following his formal disciplinary hearing on March 31, 2015. (Compl. at 6). According to Harris, Maddox denied him the right to present exculpatory evidence, failed to properly conduct the hearing, exhibited bias, and decided his case arbitrarily. (Id. at 6–7). As a result, Harris asserts, he was wrongfully forced to endure ninety days in disciplinary segregation, where his outdoor recreation time was limited; he was denied visitation privileges; and he lost access to the telephone, commissary, library, religious services, cognitive activities, and electronics. (Id. at 7–9). Harris avers that Maddox violated his procedural due process rights and that the sanction she imposed deprived him of a liberty interest. (Id.). Harris seeks compensatory and punitive damages. (Id. at 6).

On August 20, 2018, Maddox filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 21). Harris filed an Opposition on September 17, 2018. (ECF No. 23). To date, the Court has no record that Maddox filed a Reply.

## II. DISCUSSION

### A. Conversion of Maddox's Motion

Maddox's Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–7 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters

6

outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration, explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56.

Here, the Court concludes that both requirements for conversion are satisfied. Harris was on notice that the Court might resolve Maddox's Motion under Rule 56 because Maddox styled her Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Harris about the Motion and the need to file an opposition. (Aug. 21, 2018 Letter, ECF No. 22). Harris filed an Opposition that included materials in support of his claims but did not include a request for more time to conduct further discovery. (See Pl.'s Opp'n, ECF No. 23). Because the Court will consider documents

7

outside of Harris's Complaint in resolving Maddox's Motion, the Court will treat the Motion as one for summary judgment.

**B.      Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Following a properly supported motion for summary judgment, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

8

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**C.   Analysis**

Maddox makes two principal arguments that the Court should grant summary judgment in her favor: (1) Harris was not denied due process; and (2) she is entitled to qualified immunity. The Court agrees with Maddox's first argument.

In general, prisoners retain certain rights under the Due Process Clause of the U.S. Constitution. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). But prison disciplinary proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 555–56. Most disciplinary proceedings that do not involve the loss of good time credits do not implicate federal due

process requirements. See Sandin v. Conner, 515 U.S. 472, 484 (1995). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, however, he is entitled to certain procedural due process protections. Wolff, 418 U.S. at 558. These protections are: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See id. at 563–66, 592.

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. 1980). As long as there is some evidence in the record to support the disciplinary hearing officer's factual findings, a federal court will not review their accuracy. See Hill, 472 U.S. at 455. Federal courts disturb a hearing officer's conclusions of law only when they are unsupported by any evidence, or when they are wholly arbitrary and capricious. See id. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990).

As to procedural due process, Harris received notice of the rule violation, was provided an opportunity to be heard, and was given a written decision based upon some evidence. Although Harris indicated during the hearing that he wanted to call Sgt. Forney

as a witness, Maddox denied him the opportunity to do so because he did not indicate on the Notice that he intended to call Sgt. Forney as a witness. Harris, therefore, received the procedural due process to which he was entitled.

Nevertheless, in his Opposition, Harris asserts that he was not given an opportunity to sign the Notice. (Pl.'s Opp'n at 1). Even if this were true, "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir. 1995) (citing Harper v. Lee, 938 F.2d 104, 105 (8th Cir. 1991)); see also Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) (concluding that "administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred"), cert. denied, 114 S.Ct. 115 (1993). Here, Harris appealed Maddox's decision to the IGO. While his appeal was pending, the DPSCS Director of Field Services vacated the sanctions Maddox imposed and Warden Bishop modified, restoring all of Harris's diminution credits. As a result, the ALJ dismissed Harris's grievance as moot. Thus, any procedural due process violation that may have resulted from the disciplinary hearing was cured.

With regard to substantive due process, Harris alleges loss of a liberty interest that resulted from being placed in disciplinary segregation. The liberty interest Harris asserts is tenuous at best. As the U.S. Supreme Court has explained, the touchstone for determining if a particular housing assignment invokes a liberty interest is whether it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997), for example, the U.S. Court of Appeals for the Fourth Circuit applied this standard to administrative

segregation. Id. at 504. The Fourth Circuit held that "cells [that] were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above" for six months did not implicate a liberty interest in avoiding administrative segregation because they did not represent a significant hardship. Id.

Here, Harris's confinement to disciplinary segregation was not an atypical and significant hardship. The conditions of confinement on disciplinary segregation that Harris alleges here do not begin to approach the level of significant hardship contemplated by the applicable standard. The suspension of Harris's visiting privileges does not change the analysis. See White v. Keller, 438 F.Supp. 110, 115 n.4 (D.Md. 1977) (noting that prisoners and their visitors do not have a constitutional right to prison visitation but a permanent ban may implicate the Eighth Amendment). Because the Court concludes that Harris's confinement to disciplinary segregation does not implicate a liberty interest, this precludes a claim for damages under § 1983 for the extra days that a plaintiff spent on disciplinary segregation status. Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir. 1996); see also Ragan v. Lynch, 113 F.3d 875 (8th Cir. 1997).

Finally, to the extent Harris alleges Maddox violated prison policies and procedures in conducting the disciplinary hearing, such a claim does not rise to the level of a constitutional violation.[6] Prison policies and procedures do not give rise to a liberty interest. See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987); accord Kitchen v. Ickes, 116

---

[6] It is unclear whether Harris was given an opportunity to listen to the audio recording of the disciplinary hearing. (See Def.'s Mot. at 3 n.1). In any event, the audio recording was not necessary for the disposition of Maddox's Motion, and therefore, the Court did not rely upon in it reaching its decision.

F.Supp.3d 613, 629 (D.Md. 2015), aff'd, 644 F.App'x 243 (4th Cir. 2016). Thus, prison officials' failure to follow policies and procedures does not, in and of itself, result in a violation of due process. See Culbert, 834 F.2d at 628; accord Kitchen, 116 F.Supp.3d at 629. Put another way, if constitutional minima are met, the failure of prison officials to follow a prison directive or regulation does not give rise to a federal claim. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996); accord Kitchen, 116 F.Supp.3d at 629 n.6. As discussed above, the constitutional minima were satisfied in this case.

Thus, the Court concludes that there is no dispute of material fact regarding whether Maddox violated Harris's due process rights. Accordingly, the Court will grant Maddox's Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Maddox's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 21). A separate Order follows. Entered this 21st day of February, 2019.

/s/

George L. Russell, III
United States District Judge